UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| BRENDAN S. ROSS, M.D., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-1163 JDB |
| | ) | |
| DEPARTMENT OF VETERANS | ) | |
| AFFAIRS, | ) | |
| Defendant. | ) | |

NOTICE OF FILING OF AMENDED PROPOSED DISCHARGE

Attached hereto is the Amended Proposed Discharge memorandum, dated July 9, 2007,

that was issued to Dr. Ross.

Respectfully submitted,
/s/
FRED E. HAYNES, D.C. Bar #165654
Assistant United States Attorney
555 4th Street, N.W. Room E-4110
Washington, D.C. 20530
202.514.7201

# Memorandum

## Department of
## Veterans Affairs

Date:  July 9, 2007

From:  Chief, Medical Service (111)

Subj:  *Amended Proposed Discharge*

To:  Dr. Brendan Ross, Medical Service (111)

1.  This letter amends the proposed discharge letter you received on June 5, 2007.  The amendment adds paragraph 11 and modifies paragraph four of the proposed action.

2.  It is proposed to discharge you from employment with VA based on the following reasons:

*Charge 1: Displaying unprofessional and discourteous behavior to a VA patient or family member*

*Specification 1:*  You were assigned to treat Patient A.  On one occasion when Patient A came in for a scheduled appointment, you asked patient A in the presence of his wife, "what does she do, wear the pants in your family?" or words to that effect.  Your question was unprofessional and discourteous.  You are charged with displaying unprofessional and discourteous behavior to a VA patient and family member.

*Specification 2:*  You were assigned to treat Patient B.  On one occasion when Patient B came in for a scheduled appointment, you screamed at the top of your voice to Patient B, "you should not be taking those medications, bring me every drug you have and I will tell you what you need to throw away", or words to that effect.  Yelling at Patient B was unprofessional and discourteous.  You are charged with displaying unprofessional and discourteous behavior to a VA patient.

*Specification 3:*  You were assigned to treat Patient B.  On one occasion when Patient B came in for a scheduled appointment, you stated to Patient B, "you should be able to follow instructions, you are not nine, you are 49" or words to that effect.  Your comments to Patient B were unprofessional and discourteous.  You are charged with displaying unprofessional and discourteous behavior to a VA patient.

*Specification 4:*  You were assigned to treat Patient C.  On one occasion when Patient C came in for a scheduled appointment, you stated to Patient C, "you need to go to a private doctor, look at all the jewelry and stuff you have on, you got money to go to a private doctor , you need to go to a private doctor and get what you want.  You aren't even a service-connected veteran" or words to that effect.  Your comments to Patient C were discourteous and unprofessional.  You are charged with displaying unprofessional and discourteous behavior to a VA patient.

Dr. Brendan Ross, Medical Service (111)

**Specification 5:**  On or about September 21, 2006, Patient D filed a complaint with the patient advocate.  Patient D indicated that she informed you that she never received an appointment for physical therapy.  You replied to Patient D, "and you never will, the VA isn't going to waste money on you like that.  The VA is here to give you what you need, not what you want" or words to that effect.  Patient D also indicated that she stated to you that she thought the physical therapy might help her and maybe she would go see someone on her own.  Your reply to Patient D was "I don't care", or words to that effect.  Your comments to Patient D were discourteous and unprofessional.  You are charged with displaying unprofessional and discourteous behavior to a VA patient.

**Specification 6:**  You were assigned to treat Patient E.   On or about July 25, 2006, Patient E came in for a scheduled appointment.  Patient E had several medications that needed to be refilled.  As you pulled his medical record up in the computer system, you stated to Patient E some of these pills have got to go.  You indicated you were cutting the medication for his prostate problem.  Patient E asked you not to cut the medication as he would not be able to pee, you replied, "so you won't be peeing" or words to that effect.  You proceeded to say you were cutting the blood pressure medicine.  Patient E asked that you not cut his blood pressure medicine as it helps to protect his kidneys from diabetes.  You replied in a loud and harsh tone of voice to Patient E, "protect your kidneys from what, man, you're 74 years old not 54, so why protect them" or words to that effect.   Your comments to Patient E were inappropriate and unprofessional.  You are charged with displaying unprofessional and discourteous behavior to a VA patient.

### Charge II:  Failure to provide patient assessment and treatment

**Specification 1:**  You were assigned to treat Patient E.  On one occasion when Patient E came in for a scheduled appointment, you noticed his mason belt and immediately turned to your computer and pulled up a website of the National Masonic Organization. You showed Patient E and his wife pictures of the museum in Virginia and spent the entire office visit discussing the Masonic website.  You failed to give Patient E an opportunity to state a medical complaint.  You did not examine Patient E nor did you assess his medical condition and provide treatment.  You are charged with failure to provide patient assessment and treatment on Patient E.

**Specification 2:**  You were assigned to treat Patient F, a male patient over 50 years old.  Patient F requested a prostate exam on numerous occasions.  You did not examine Patient F, nor did you provide a prostate exam as requested.  You are charged with failure to provide patient assessment and treatment on Patient F.

**Specification 3:**  You were assigned to treat Patient G.  Patient G came to your office as a walk-in patient complaining of severe head, neck, ear and eye pain and stated he needed to go back to neurosurgery.  You replied, "no you don't, take these muscle relaxers", or words to that effect. You did not examine Patient G to determine the source of his pain or make a referral for a consult.  You are charged with failure to provide patient assessment and treatment on Patient G.

### Charge III:  Misrepresenting a Patient Medical Record by documenting physical exam findings when no examination was done.

07-10-07  10:39am  From-                                         T-509  P.04  F-616

Dr. Brendan Ross, Medical Service (111)

*Specification 1:* Patient H was seen in your clinic on 09-07-05, 01-09-06, 6-28-06 and on 10-26-06. The primary care notes you input into the medical record indicate you physically examined the patient. In a statement dated 11-20-06, Patient H states you never examined him. You are charged with misrepresenting patient medical records dated 09-07-05, 01-09-06, 06-28-06 and 10-26-06 of Patient H by documenting physical exam findings when no examination was done.

*Specification 2:* Patient I was seen in your clinic on 03-29-06. The primary care note you completed for Patient I dated 03-29-06, indicate you physically examined the patient. Patient I complained to the patient advocate that you never put your hands on him at all, but just looked at the computer at notes that nursing staff had input. You are charged with misrepresenting the patient medical record dated 03-29-06 of Patient I by documenting physical exam findings when no examination was done.

*Specification 3:* Patient J was seen in your clinic on 04-27-06 and 10-27-06. The primary care notes you completed for each visit indicate that you did a physical exam of Patient J. Patient J's spouse, who was in the room, complained to the patient advocate that you never touched her husband. You are charged with misrepresenting the patient medical records dated 04-27-06 and 10-27-06 of Patient J by documenting physical exam findings when no examination was done.

*Specification 4:* Patient K was seen in your clinic on 09-16-04 and 07-12-05. The primary care notes you completed for each visit indicate that you did a physical exam of Patient K. Patient K complained to the patient advocate that you never put your hands on him. You are charged with misrepresenting the patient medical records dated 09-16-04 and 07-12-05 of Patient K by documenting physical exam findings when no examination was done.

*Specification 5:* Patient L was seen in your clinic 05-03-05, 6-14-05 and 7-17-06. The primary care notes you completed for each visit indicate that you did a physical exam of Patient L. Patient L testified under oath that you never examined him. You are charged with misrepresenting the patient medical records dated 05-03-05, 06-14-05 and 07-17-06 of Patient L by documenting physical exam findings when no examination was done.

*Specification 6:* Patient G was seen in your clinic 11-07-05 and 03-07-06. The primary care notes you completed for each visit indicate that you did a physical exam of Patient G. Patient G testified under oath that you never examined him. You are charged with misrepresenting the patient medical records dated 11-07-05 and 03-07-06 of Patient G by documenting physical exam findings when no examination was done.

*Specification 7:* Patient D was seen in your clinic 12-23-04 and 03-14-06. The primary care notes you completed for each visit indicate that you did a physical exam of Patient D. Patient D testified under oath that you never examined him. You are charged with misrepresenting the patient medical records dated 12-23-04 and 03-14-06 of Patient D by documenting physical exam findings when no examination was done.

Automated VA FORM 2105

Dr. Brendan Ross, Medical Service (111)

*Specification 8:* Patient B was seen in your clinic 05-09-05 and 05-12-06. The primary care notes you completed for each visit indicate that you did a physical exam of Patient B. Patient B testified under oath that you never examined him. You are charged with misrepresenting the patient medical records dated 05-09-05 and 05-12-06 of Patient B by documenting physical exam findings when no examination was done.

*Specification 9:* Patient M was seen in your clinic on 08-31-06. The primary care note you completed for this visit indicates that you did a physical exam of Patient M. Patient M testified under oath that you never examined him. You are charged with misrepresenting the patient medical record dated 08-31-06 of Patient M by documenting physical exam findings when no examination was done.

*Specification 10:* Patient N was seen in your clinic on 06-06-05 and 03-22-06. The primary care notes you completed for each visit indicate that you did a physical exam of Patient N. Patient N's spouse, who was in the room, testified under oath that you never examined him. You are charged with misrepresenting the patient medical record dated 06-06-05 and 03-22-06 of Patient N by documenting physical exam findings when no examination was done.

*Specification 11:* Patient F was seen in your clinic on 03-01-05, 05-24-05 and 10-13-05. The primary care note you completed for each visit indicate that you did a physical exam of Patient F. Patient F testified under oath that you never examined him. You are charged with misrepresenting the patient medical records dated 03-01-05, 05-24-05 and 10-13-05 by documenting physical exam findings when no examination was done.

### Charge IV:  Endangering the safety of a VA patient

*Specification:* On August 29, 2006, the spouse of Patient L requested that you refill Patient L's heart and blood pressure medicine. You argued with the patient's spouse stating that he had been out of the medicine since February and could not have possibly been taking the medicine. You refused to refill the medicine and told the spouse they would need to make an appointment. The patient and spouse proceeded to urgent care where the prescription was immediately refilled. Your actions were inconsistent with the agency's mission of providing medical care for veterans. You are charged with endangering the safety of VA Patient L on August 29, 2006.

### Charge V:  Displaying poor patient interaction skills

*Specification:* Patient O came to your clinic complaining of fever. You indicated to Patient O you were going to put him on medication for a prostate infection. You advised Patient O to call you in three days and you would tell him whether or not he needed to stay on the medication. Patient O called your office on three occasions as you instructed and you did not return his calls. Patient O contacted the Patient Representative who then contacted the telephone advice nurse. You then called Patient O on the telephone and abruptly stated, "Patient O you have lung cancer" or words to that effect. Your telephone call to Patient O to abruptly state this diagnosis was inappropriate. You are charged with displaying poor patient interaction skills.

### Charge VI:  Inappropriate contact with a witness in an official agency investigation

Dr. Brendan Ross, Medical Service (111)

*Specification:* On November 8, 2006, Kathleen Oglesby, RN was interviewed by the Administrative Board of Investigation that was convened to investigate allegations of your inappropriate conduct and communication with patients, family members and staff. On that date, following the interview, you called for Ms. Oglesby to come to your office. When Ms. Oglesby reported to your office as you requested, you closed the door and began questioning Ms. Oglesby about her interview with the Administrative Board of Investigation. You asked Ms. Oglesby why she did not tell you about the interview and asked her what she said to the Board. Ms. Oglesby informed you that she was under oath and had been directed not to discuss her interview with anyone including you. You again asked Ms. Oglesby what she had been asked by the Board. Ms. Oglesby again informed you she was under oath and would not discuss her testimony with you. Your questions to Ms. Oglesby regarding her interview with the Board charged with investigating your actions was inappropriate. You are charged with inappropriate contact with a witness in an official agency investigation.

3.     You have the right to reply to this notice orally, or in writing, or both orally and in writing, and to submit affidavits and other documentary evidence in support of your reply, showing why the charge(s) are unfounded and any other reasons why your discharge should not be effected. You will be given fourteen (14) calendar days from receipt of this notice to reply to these reasons orally or in writing, or both orally and in writing, and to submit any affidavits or other documentary evidence. Your written reply should be submitted to the Center Director. The Center Director will receive your oral reply.

4.     The evidence on which this amended notice of proposed action is based was provided to you on June 8, 2007 by Samuel Evans, Sr., Human Resources Officer, at (601) 364-1239.

5.     On September 27, 2004, you were suspended for seven (7) calendar days for unauthorized absence; failure to follow proper leave requesting procedures, and failure to provide appropriate and accurate documentation of medical care provided. This past record will be taken into account in determining proper disciplinary action, if one or more of the above charges is sustained. You may make a statement expressing your views as to the consideration to be given such past record in determining proper action.

6.     You may be represented by an attorney or other representative of your choice at all stages of this matter. *Any representative must be designated in writing.*

7.     The final decision to effect the action proposed has not been made. The Center Director, who will make the final decision, will give full and impartial consideration to your reply(ies), if submitted.

8.     If it is the decision of the Center Director that you be discharged, your discharge will be effective not less than 30 calendar days from the day after the date of receipt of this notice.

9.     Consistent with the mandate in the Department of Veterans Affairs Health-Care Amendments Act of 1985 (Pub.L.99-166), it is the policy of VA to report to the State licensing

Automated VA FORM 2105

Dr. Brendan Ross, Medical Service (111)

boards those terminated (voluntarily or otherwise) health-care professionals whose professional clinical practice appears to have so significantly failed to conform to generally accepted standards of clinical professional practice as to raise reasonable concerns for the safety of patients. Please be advised that, in the event you are found not to meet standards of care, consideration will be given whether, under these criteria, you should be reported to the State licensing board(s).

10.    You will be retained in an administrative leave status during the advance notice period.

11.    Should a decision be made to discharge you (or suspend you for more than 30 days) on the basis of professional conduct or competence, the discharge may be concurrent with the revocation (or suspension) of your clinical privileges. This information may be reported through the State Licensing board(s) to National Practitioner Data Bank (NPDB).

Stephen A. Geraci, M.D.

Attachment:  Douglas Factors

cc:    President, NFFE, Local 589
       John J. Ross, III Esq.
       7021 Marlan Drive
       Alexandria, VA 22307

## DOUGLAS FACTORS

**Employee's Name:    Brendan S. Ross, M.D.**

**Type of Action:        Discharge**

**Factors:**

    **a.  The nature and seriousness of the offense and its relation to the employee's duties, position and responsibilities, including whether the offense was intentional, technical or inadvertent, or was committed maliciously or for gain, or was frequently repeated:**
The nature and seriousness of the offenses Dr. Ross is charged with are severe in that his conduct caused a breach of trust that harms the patients, their families and the agency. The pattern of behavior as well as the frequency and volume of complaints impede the efficiency of the service. Patients are placed in clear and imminent danger by falsification of records, including reports of examinations which were never performed.

    **b.  The employee's job level and type of employment, including supervisory or fiduciary role, contacts with the public, and prominence of the position:**
Dr. Ross is a full-time permanent staff physician who has regular daily contact with patients, family members and staff in a busy primary care clinic. He interacted with a minimum of 20 patients per day.

    **c.  Employee's past disciplinary record:**
Dr. Ross received a 7-day suspension on 09-20-2004, for unauthorized absence; failure to follow proper leave requesting procedures and failure to provide appropriate and accurate documentation of medical care provided.

    **d.  The employee's past work record, including length of service, performance on the job, ability to get along with fellow workers and dependability:**
Dr. Ross has been a staff physician at this facility since July 2, 2000. He has a high volume of patient complaints, and is regularly and consistently late for patient appointments, creating backlog and disruption in his assigned clinic.

    **e.  The effect of the offense upon the employee's ability to perform at a satisfactory level and its effect upon supervisors' confidence in the employee's ability to perform assigned duties:**
Dr. Ross' conduct is clearly intentional. Failure to do exams as documented in the medical record place patients at physical risk of undiagnosed disease, endangering patient safety with each occurrence. As such acts could not have been performed accidentally; there is no confidence that such acts would not be repeated whenever the opportunity was presented. Nursing staff have made verbal complaints on several occasions of Dr. Ross' insulting them and speaking to them in a loud and abusive voice.

*Page 2*
*Douglas Factors ~ Dr. Brendan S. Ross (Discharge)*

     **f.   The consistency of the penalty imposed in this case with those imposed upon other employees for the same or similar offenses and with the agency's applicable table of penalties:**
The penalty imposed is consistent with those recommended penalties outlined in the VA Table of Penalties.

     **g.   The notoriety of the offense or its impact upon the reputation of the agency:**
Dr. Ross' quality of care, or lack thereof, is well known throughout his veteran patient panel and staff at this medical center.  His unprofessional and potentially dangerous behavior toward veterans lowers confidence of veterans in the care provided at the Jackson VAMC and increases the agency liability for medical malpractice lawsuits.

     **h.   The clarity with which the employee was on notice of any rules which were violated in committing the offense:**
Physicians have an affirmative obligation to maintain the integrity, accuracy, truth and reliability of patient medical records.  The offenses cited are so contrary to the basic tenets of customary care that no health care provider could argue that the behaviors could ever be acceptable.

     **i:   Employee's potential for rehabilitation:**
None.  Intentional falsification of medical records to avoid accusations of negligence would not be remediated by any rehabilitative process.

     **j:   Mitigating circumstances surrounding the offense such as unusual job tensions, personality problems, mental impairment, harassment, or bad faith, malice or provocation on the part of others involved in the matter:**
None evidenced.  At no time did Dr. Ross convey to service leadership any issues which could be considered mitigating to these behaviors.

*Page 3*
*Douglas Factors – Dr. Brendan S. Ross (Discharge)*

      **k:  The adequacy and effectiveness of alternative sanctions to deter such conduct in the future by the employee or others:**
None.  The conduct presents a clear and imminent danger to patients.

*Stephen A. Geraci, MD*                    May 25, 2007
Stephen A. Geraci, M.D.                          Date Signed
**Chief, Medical Service**
**Name and Title of Proposing Official**

**I have reviewed and considered the relevant factors s described above.  In consideration of the above factors, any mitigating circumstances and the employee's potential for rehabilitation, it is my decision to:** _____.

Richard J. Baltz, Center Director              Date Signed
**Name and Title of Deciding Official**